**Robert MACHT, et al., Appellants,**

v.

**Samuel K. SKINNER, Secretary, Department of Transportation, et al., Appellees.**

**No. 90–5017.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 24, 1990.

Decided Oct. 12, 1990.

See also 128 F.R.D. 588.

Joseph J. McGovern, with whom Beth Anne Smith, Philadelphia, Pa., was on the brief, for appellants.

Mark E. Nagle, Asst. U.S. Atty., Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., and R. Craig Lawrence, Asst. U.S. Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellees Samuel K. Skinner, Secretary, Dept. of Transp., et al.

Carmen M. Shepard, Asst. Atty. Gen., Baltimore, Md., for appellee State of Md.

David A. Doheny, Andrea C. Ferster and Elizabeth S. Merritt, Washington, D.C., were on the brief for amicus curiae, urging that this court reverse the decision of the district court and enjoin the project until the defendants fully comply with Section 4(f) of the Dept. of Transp. Act, the Nat. Environmental Policy Act, and the Nat. Historic Preservation Act.

Before WALD, Chief Judge, and RUTH BADER GINSBURG and THOMAS, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Appellants, Robert Macht, Lois Macht, and the Robert E. Lee Park Defense Fund, Inc. and its members, sued Samuel K. Skinner, Secretary of the United States Department of Transportation, and various other state and federal officials to enjoin construction of the Central Baltimore Light Rail Line, alleging that state and federal officials failed to comply with § 4(f) of the Department of Transportation Act, 49 U.S.C. § 303, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and rules and regulations promulgated thereunder. The district court denied the appellants' motion for summary judgment and granted the state and federal appellees' cross-motions for summary judgment. *Macht v. Skinner,* No. 89–1161, Memorandum Opinion ("Mem. op.") (D.D.C. Dec. 21, 1989), *reprinted in* Joint Appendix ("J.A.") at 46. This appeal followed, and we now affirm.

## I. FACTS

After preliminary analysis by the Maryland Mass Transit Administration ("MTA"), Maryland transit officials decided in December 1987 to build a 27-mile light rail transit system[1]—the Central Baltimore Light Rail Line ("CLRT"). J.A. at 161–62. Maryland initially planned the CLRT to extend from Hunt Valley, in northern Baltimore County, through downtown Baltimore, to Baltimore–Washington International Airport ("BWI") and Dorsey Road in Anne Arundel County. Under the original plan, state and local governments were to finance $250 million of the estimated $290 million project, while the Urban Mass Transportation Administration ("UMTA") was to contribute the remaining $40 million. *Id.* at 162.

As the planning progressed, however, Maryland officials realized that they were required to comply with NEPA and § 4(f) in order to obtain UMTA funding. Because compliance with NEPA would delay construction of the CLRT, Maryland officials decided in late 1988 to withdraw their request for UMTA funding and build a smaller light rail line entirely with state and local funds. *Macht,* Mem. op. at 2, J.A. at 47. Under the modified Light Rail Project ("Light Rail Project" or "the Project"), Maryland is building a 22.5-mile baseline segment that will run from Dorsey Road in the south to Timonium Road in the north. J.A. at 294. In addition, Maryland is considering building three extensions with federal funds: (1) an extension from Timonium Road to Hunt Valley in the north, (2) a spur connecting BWI Airport to the Project in the south, and (3) a connection between Pennsylvania Station and either Cathedral Street or an area "north of the Mount Royal Station." *Macht,* Mem. op. at 2, J.A. at 47.

Maryland has begun construction on the 22.5-mile state segment. But thus far the only federal involvement in the Project has been a $2.5 million UMTA grant to help the state complete alternative analyses and draft environmental impact statements ("EIS") for the proposed extensions.[2] *Macht,* Mem. op. at 6, J.A. at 51. Appellants brought suit in the district court to enjoin construction of the Light Rail Project, alleging that Maryland illegally divided the Project into a state segment and two federal extensions in order to avoid compliance with NEPA. In particular, appellants assert that the state segment under construction will have an adverse impact on the Robert E. Lee Park, and that Maryland is attempting to build the Light Rail Project through the park without doing the environmental analysis required by NEPA and § 4(f) of the Transportation Act.

## II. DISCUSSION

NEPA requires that federal agencies consider the environmental consequences of "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Thus the threshold issue in this case is whether, at this point, there is sufficient federal involvement in the Light Rail Project to constitute major federal action affecting the environment under NEPA.[3] Appellants

---

1. The Maryland Code defines "light rail transit" as "rail transit which is electrically powered and can operate in mixed traffic with automobiles." Md.Transp.Code Ann. Art. § 7–101(e).

2. On September 13, 1990, appellants moved to add to the record a copy of the House Appropriations Committee Report accompanying the 1991 Department of Transportation and Related Agencies Appropriations Bill. In that Report, the Committee "direct[ed] UMTA to give priority consideration to grant applications of $9,750,-000 for the State of Maryland's commuter rail service." H.Rep. No. 101–584, 101st Cong., 2d Sess. 138 (1990). Although we grant appellants' motion, the Report does not affect the outcome

of this case. As discussed below, there is no major federal action in the Light Rail Project because federal funds have been used only to examine *possible* extensions to the state segment, and UMTA has not committed itself to fund design or construction of the proposed extensions. Because the 1991 Appropriations bill does not commit federal funds to the Project, it does not affect our analysis.

3. Appellants also allege violations of § 4(f) of the Transportation Act. Section 4(f) applies only to federally-funded transportation projects. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 405, 91 S.Ct. 814, 818, 28 L.Ed.2d 136 (1971). Because the expenditure of federal

base their claim that the Project involves major federal action on two facts: (1) UMTA has given Maryland $2.5 million for preliminary engineering studies and environmental impact statements for the proposed extensions to the Light Rail Project; and (2) Maryland must obtain from the Army Corps of Engineers a wetlands permit pursuant to § 404 of the Clean Water Act and § 10 of the Rivers and Harbors Act in order to build the state segment. We hold that neither is sufficient to transform the entirely state-funded Light Rail Project into "major federal action" affecting the environment within the meaning of NEPA.[4]

A. *UMTA Funding for Preliminary Studies*

■ On September 29, 1989, UMTA granted MTA a maximum of $2,587,500 to perform an Alternative Analysis and Draft Environmental Impact Statement for the possible extensions to the Light Rail Project. *Macht,* Mem. op. at 6, J.A. at 51. Appellants argue that this federal expenditure makes the entire Light Rail Project— the 22.5-mile state segment under construction as well as the proposed extensions—"major federal action" affecting the environment within the meaning of NEPA. This argument is based on a misconception about NEPA's requirements.

NEPA requires federal agencies to prepare or evaluate an EIS for any proposed "major federal action" that will "significantly affect[ ] the quality of the human environment." 42 U.S.C. § 4332(2)(C). NEPA does not require UMTA to prepare an EIS until it proposes or decides to participate in a project that will affect the environment. In this case, UMTA has not yet decided to assist Maryland in the final design or construction of the proposed extensions to the Light Rail Project. As the district court aptly recognized, "[t]o argue that the federal funding . . . for the preliminary analysis studies constitutes major federal action in the proposed extensions would be putting the proverbial cart before the horse because until these studies are done a decision cannot be reached on what projects—if any—are to be developed." *Macht,* Mem. op. at 6, J.A. at 51.

Our holding that UMTA funding of preliminary studies is not major federal action within the meaning of NEPA is consistent with other circuit court precedent. In *Rapid Transit Advocates, Inc. v. Southern California Rapid Transit District,* 752 F.2d 373 (9th Cir.1985) (per curiam), a group of homeowners sought to enjoin an UMTA grant to assist the local transit district in performing preliminary design and engineering studies for a proposed subway line, alleging that UMTA failed to comply with various provisions of the UMT Act and NEPA. The Ninth Circuit rejected their claim, saying:

Neither [UMTA's] decision nor the design and engineering work that will follow will have any impact upon appellants in and of themselves. . . . The UMT Administration has explicitly disavowed any advance commitment to approve con-

funds for preliminary planning and environmental impact statements does not federalize the Light Rail Project under NEPA, it similarly does not federalize the Project under § 4(f). *See Maryland Conservation Council, Inc. v. Gilchrist,* 808 F.2d 1039, 1043 (4th Cir.1986) ("a grant of $245,000 in federal funds for what is obviously preliminary planning for the road . . . is so small compared to the actual cost of construction of eight miles of multi-lane highway that we think it insufficient to render the highway a federally-funded transportation project. The complaint therefore fails to state a claim under the Transportation Act.").

4. Because we hold that the Light Rail Project does not involve "major federal action," we do not decide whether the district court correctly held that Maryland's segmentation of the

Project was proper. Unless a project involves major federal action, NEPA does not apply. The segmentation cases are distinguishable because they involve the question of whether a *federal* project has been illegally segmented to avoid compliance with NEPA. *See, e.g., Taxpayers Watchdog, Inc. v. Stanley,* 819 F.2d 294 (D.C. Cir.1987) (per curiam) (construction of Los Angeles subway was major federal action because UMTA provided funds for construction); *Swain v. Brinegar,* 542 F.2d 364 (7th Cir.1976) (en banc) (highway constructed in part with federal funds was major federal action); *Indian Lookout Alliance v. Volpe,* 484 F.2d 11 (8th Cir.1973) (construction of highway was major federal action because state requested federal funds and obtained federal location approval).

struction.... The process may never be completed; the Wilshire Subway may never be funded. If it is, appellants' present objections can be raised and fully considered in a suit to review the agency's final action in light of then existing circumstances.

752 F.2d at 378–79; *see also Atlanta Coalition on the Transportation Crisis, Inc. v. Atlanta Regional Commission*, 599 F.2d 1333, 1347 (5th Cir.1979) (development of regional transportation plan is not major federal action where the "federal financial assistance to the planning process in no way implies a commitment by any federal agency to fund any transportation project or projects or to undertake, fund or approve any action that directly affects the human environment").

Similarly in this case, UMTA's decision to fund preliminary studies, in and of itself, will have no impact on appellants or the environment. UMTA has expressly stated that its decision to provide funding for alternative analyses "is not a commitment to fund the construction of any project that may result." Letter from Alfred A. Delli-Bovi, Administrator of UMTA, to Ronald J. Hartman, Administrator of MTA (March 30, 1989), J.A. at 371. In fact, Maryland has not even decided to build the proposed extensions—with or without federal financial assistance. *See Macht*, Mem. op. at 8, J.A. at 53. At this point, the federal involvement is not the firm commitment that could transform the so far entirely state-funded Light Rail Project into major federal action affecting the environment within the meaning of NEPA. *Cf. Defenders of Wildlife v. Andrus*, 627 F.2d 1238, 1243 (D.C.Cir.1980) ("only when an agency reaches the point ... where it is ready to propose a course of action need it be ready to produce an impact statement" pursuant to NEPA).

Nor are we persuaded that the Project involves major federal action because Maryland hopes to obtain a $40 million UMTA grant to build the extensions. The district court perceptively recognized that "in this era of federal fiscal shortcomings there is a wide gulf between what a state may want and what the federal government is willing to provide. The [appellants] have provided no evidence that the federal government is irretrievably committed to providing the funds for the proposed extensions." *Macht*, Mem. op. at 7–8, J.A. at 52–53. Absent such evidence, we cannot find major federal action in the Light Rail Project. *See Boston v. Volpe*, 464 F.2d 254, 258 (1st Cir.1972) (state's "present intention eventually to seek federal funds for yet another stretch of [airport] taxiway" does not convert present state construction of taxiway into a federal project).

Because we hold that the Light Rail Project does not yet involve major federal action, we do not decide whether NEPA may require an environmental analysis if UMTA ultimately decides to fund construction of the extensions, or whether such a decision may constitute major federal action within the meaning of NEPA. *Cf. Indian Lookout Alliance v. Volpe*, 484 F.2d 11, 16 (8th Cir.1973) ("any project for which federal funds have been approved or committed constitutes a major federal action bringing into play the requirements of NEPA"). If such an eventuality occurs, appellants may renew their claim that an EIS is required prior to the disbursement of federal funds or question the scope of the EIS, *i.e.*, whether it must encompass the baseline segment as well as the extensions. *See Kleppe v. Sierra Club*, 427 U.S. 390, 406 n. 15, 96 S.Ct. 2718, 2728 n. 15, 49 L.Ed.2d 576 (1976) ("the time at which a court enters the [NEPA] process is when the report or recommendation on the proposal [for major federal action] is made, and someone protests either the absence or the adequacy of the final impact statement"). An adequate EIS would, of course, be a necessary prerequisite for the expenditure of federal funds on the project.

B. *The Army Corps of Engineers' Permit*

Appellants also claim that even though the state segment is financed entirely with state funds, it is major federal action under NEPA because the Army Corps of Engineers must issue a wetlands permit pursuant to § 404 of the Clean Water Act, 33

U.S.C. § 1344, and § 10 of the Rivers and Harbors Act, 33 U.S.C. § 403.[5] Appellants argue that because the Project has been "federalized," Maryland must comply with NEPA before it may construct the state segment. We disagree and take this opportunity to clarify what it means to "federalize" state or private action for purposes of NEPA.

NEPA requires *federal agencies*—not states or private parties—to consider the environmental impacts of their proposed actions. "[F]or any major Federal action funded under a program of grants to States," however, NEPA allows a state agency to prepare an EIS for a federal agency if certain conditions are met. 42 U.S.C. § 4332(2)(D); *see also* 23 C.F.R. § 771.109(c) (UMTA regulations). Regardless of whether the EIS is prepared by a federal or state agency, the twofold purpose of NEPA is "to inject environmental considerations into the *federal* agency's decisionmaking process" and "to inform the public that the [federal] agency has considered environmental concerns in its decisionmaking process." *Weinberger v. Catholic Action of Hawaii/Peace Education Project*, 454 U.S. 139, 143, 102 S.Ct. 197, 201, 70 L.Ed.2d 298 (1981) (emphasis added).

■ Appellants correctly assert that federal involvement in a nonfederal project may be sufficient to "federalize" the project for purposes of NEPA. *See, e.g., Maryland Conservation Council, Inc. v. Gilchrist*, 808 F.2d 1039 (4th Cir.1986); *Winnebago Tribe of Nebraska v. Ray*, 621 F.2d 269 (8th Cir.), *cert. denied*, 449 U.S. 836, 101 S.Ct. 110, 66 L.Ed.2d 43 (1980); *Sierra Club v. Hodel*, 544 F.2d 1036 (9th Cir.1976). But contrary to appellants' argument, none of these cases stand for the proposition that a *state* must comply with NEPA if one of its projects is found to involve major federal action.

The cases instead fall into two categories. Cases in the first category involve allegations that a federal agency failed to comply with NEPA when it issued a permit allowing a nonfederal project to go forward. In these cases the question is usually whether the federal agency had to prepare an EIS before issuing the permit or whether the EIS prepared by the federal agency was sufficiently broad in scope. *See, e.g., Winnebago Tribe of Nebraska*, 621 F.2d at 272–73 (challenge to Army Corps' decision that issuance of wetlands permit would have no significant impact and thus EIS was not required); *Save the Bay, Inc. v. United States Corps of Engineers*, 610 F.2d 322 (5th Cir.) (challenge to Army Corps' decision that issuance of pipeline construction permit was not major federal action requiring compliance with NEPA), *cert. denied*, 449 U.S. 900, 101 S.Ct. 269, 66 L.Ed.2d 130 (1980). Because the Army Corps is not a party to this case and there is no allegation that the Army Corps has failed to comply with NEPA, these cases are not controlling on the issue before us.[6]

■ The issue in the second category of cases is whether state or private action on an entire project should be enjoined until the federal agencies that must approve particular portions of the project have complied with NEPA. The question in these cases is whether the federal participation in the project is so substantial that the state should not be allowed to go forward until all the federal approvals have been granted

---

5. Appellants also claim that the state segment is federalized because the Army Corps must comply with § 106 of the National Historic Preservation Act, 16 U.S.C. § 470f, which requires the Corps to identify and evaluate the adverse impacts on historic properties. We do not consider this claim because appellants did not raise it in their complaint or motion for summary judgment in the district court. *See District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C.Cir.1984) ("It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal. . . .

Decisions in this Circuit have consistently followed a practice of dismissing appeals brought on grounds not asserted in the trial court.").

6. These cases may be relevant to other litigation about the Light Rail Project. When the Army Corps issues a wetlands permit, appellants can challenge the adequacy (or even the existence) of the EIS done by the Army Corps. Maryland may not construct the parts of the Project that traverse the wetlands until the Corps issues a valid permit.

in accordance with NEPA. *See, e.g., Sierra Club v. Hodel,* 544 F.2d 1036 (9th Cir. 1976) (court enjoined construction of an ALCOA plant until the Bonneville Power Administration—a federal agency subject to NEPA—completed an EIS; by contracting to construct a transmission line and supply power to the ALCOA plant, the BPA federalized the entire project); *Dalsis v. Hills,* 424 F.Supp. 784, 787 (W.D.N.Y. 1976) (court enjoined construction of shopping mall until HUD prepared an EIS because HUD financed demolition of "substandard structures" on the site, and the developer "could not lawfully have started the redevelopment project without HUD's approval").

*Maryland Conservation Council, Inc. v. Gilchrist,* 808 F.2d 1039 (4th Cir.1986), on which appellants primarily rely, falls in this latter category. *Gilchrist* involved an attempt to enjoin construction of a county highway designed to pass through a state park. The court found that the county highway project involved major federal action because: (1) the highway crossed a state park that had been purchased with a substantial federal grant; therefore, the county needed the approval of the Secretary of Interior, pursuant to § 6(f) of the Conservation Act, to convert the park land to other than recreational use; (2) the county needed a § 404 permit from the Army Corps to dredge a wetlands; and (3) the county might need the approval of the Secretary of Transportation to use park land for a transportation project under § 4(f) of the Transportation Act. 808 F.2d at 1042. On these facts, the court of appeals held that the district court should have considered the motion to enjoin the county's construction until the federal officials complied with NEPA. *Id.* at 1403.

*Gilchrist* did not hold that the *state* had to comply with NEPA because the approval of several federal agencies was a necessary precondition to the state project. Instead, *Gilchrist* held that because the state needed permits and discretionary approval from several federal agencies in order to build a substantial part of the highway, the state could not construct any portion of the highway until the federal agencies had approved the project in compliance with NEPA. The reasoning of the Fourth Circuit in *Gilchrist* is sound: the state may not begin construction of any part of a project if the effect of such construction would be to limit significantly the options of the federal officials who have discretion over substantial portions of the project. Nevertheless, we decline to extend *Gilchrist* to this case where the only federal involvement is the issuance of a wetlands permit covering a maximum of 3.58 acres of the 22.5–mile Project.

First, and most significantly, the district court found that the Army Corps has discretion over only "a negligible portion of the entire project." *Macht,* Mem. op. at 10, J.A. at 55. This case is thus distinguishable from *Gilchrist* where several federal agencies had discretion over a substantial part of the highway project. *See also Sierra Club v. Alexander,* 484 F.Supp. 455, 572 (N.D.N.Y.), *aff'd mem.,* 633 F.2d 206 (2d Cir.1980) (court empowered to enjoin private construction of shopping mall until Army Corps complies with NEPA where completion of the project will require Army Corps approval to rechannel 2,000 linear feet of creek and fill 38 acres of wetlands).

Second, "the degree of federal involvement in the 22.5 mile Project is limited solely to the issuance of wetlands permits and no other federal activity is required for the Project's construction." *Macht,* Mem. op. at 11, J.A. at 56. Maryland has not, therefore, entered a "joint venture" with the federal government by contracting to obtain goods or services from a federal agency. *See Sierra Club v. Hodel,* 544 F.2d 1036 (9th Cir.1976) (construction of ALCOA plant may be enjoined until federal agency prepares EIS because ALCOA federalized the project by contracting to have a federal agency construct a transmission line and supply power to the plant).

Finally, Maryland has not entered a financial "partnership" with the federal government because the district court found that "the federal government has given no direct—or indirect, for that matter—financial aid to the state for the Project." *Macht,* Mem. op. at 11, J.A. at

56; *cf. Gilchrist*, 808 F.2d at 1042 (federal government provided indirect financial assistance because state highway would cross a park established with a "grant of substantial federal funds"); *Biderman v. Morton*, 497 F.2d 1141 (2d Cir.1974) ("it is well settled that non-federal parties may be enjoined, pending completion of an EIS, where those non-federal entities have entered into a partnership or joint venture with the Federal Government, and are thus recipients of federal funding"); *Foundation on Economic Trends v. Heckler*, 756 F.2d 143 (D.C.Cir.1985) (enjoining University of California experiment that NIH approved and funded without complying with NEPA).

This is clearly not a case in which the state has entered a "partnership" or "joint venture" with the federal government by contracting with a federal agency to obtain goods, services, or financing. Nor is this a case where the federal government has discretion over substantial portions of the project. NEPA therefore provides no basis for enjoining Maryland's construction of the Light Rail Project.

### III. Conclusion

We affirm the district court's decision to deny appellants' motion for summary judgment and grant the state and federal appellees' cross-motions for summary judgment. First, we hold that UMTA funding for preliminary design and environmental impact statements for the proposed extensions to the Light Rail Project does not constitute "major federal action" within the meaning of NEPA. At this point, therefore, NEPA does not require either UMTA or MTA to prepare an EIS.

Second, we hold that the Light Rail Project has not been "federalized" because the Army Corps has discretion over only a negligible portion of the Project, and the federal participation in the Project is insufficient to create a "partnership" or "joint venture" between Maryland and the federal government. Accordingly, the district court in this case correctly declined to enjoin construction of the Light Rail Project.

*It is so ordered.*