Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued May 13, 2003        Decided June 27, 2003

No. 02-5260

COALITION FOR UNDERGROUND EXPANSION, *ET AL.*,
APPELLANTS

v.

NORMAN Y. MINETA,
SECRETARY OF THE UNITED STATES
DEPARTMENT OF TRANSPORTATION,
IN HIS OFFICIAL CAPACITY AND NURIA I. FERNANDEZ,
ACTING ADMINISTRATOR OF THE FEDERAL TRANSIT ADMINISTRATION,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 99cv02337)

*David J. Newburger* argued the cause for the appellants.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*John A. Bryson*, Attorney, United States Department of Justice, argued the cause for the appellees. *Trudy B. Levy*, Associate Chief Counsel, Federal Transit Administration, was on brief.

Before: SENTELLE, HENDERSON and GARLAND, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Coalition for Underground Expansion and its eight individual directors (collectively identified as Coalition)[1] appeal the decision of the district court dismissing its action against the Secretary of the United States Department of Transportation and the Administrator of the Federal Transit Administration (FTA), an agency within the Department of Transportation. The complaint sought declaratory and injunctive relief to compel the FTA to conduct an environmental review of the proposed addition of a third line segment—the Clayton–Shrewsbury Extension (Extension)—to the MetroLink rail transit system, which serves the St. Louis metropolitan area. The complaint contended the FTA's failure to conduct such review violated the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321–47,[2] the National Historic Preservation Act (NHPA), 16 U.S.C. §§ 470 to 470x–6,[3] and section 4(f) of the Depart-

---

[1] The Coalition is a Missouri non-profit organization dedicated to "developing and protecting civic resources in the St. Louis metropolitan area." Appellants' Br. (Certificate as to Parties, Rulings, and Related Cases).

[2] Section 102(2)(C) of NEPA requires that federal agencies

include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on

(I) the environmental impact of the proposed action. . . .

42 U.S.C. § 4332(2)(C)(I).

[3] Section 106 of the NHPA provides in part:

The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted un-

ment of Transportation Act (DOTA), 49 U.S.C. § 303(c).[4] The district court dismissed the complaint on two alternate grounds: (1) the Coalition lacked standing because "the myriad injuries alleged by plaintiffs are in no respect caused by any action or inaction of the federal defendants who remain in the case and could not be redressed by any conceivable ruling in plaintiffs' favor" and (2) the complaint failed to state a claim because "even with discovery plaintiffs would be able to prove no state of facts from which it could be found that the 'C[layton]-S[hrewsbury] Extension' is a 'major federal action' under NEPA, 42 U.S.C. § 4332(2)(C), or is otherwise subject to preconditions required by federal law." *Coalition for Underground Expansion v. Slater*, C.A. No. 99–2337, 1 (D.D.C. filed July 17, 2002) (citations omitted). We affirm the

---

> dertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register.

16 U.S.C. § 470f.

[4] Section 4(f) of DOTA provides in part:

> (c) The Secretary may approve a transportation program or project (other than any project for a park road or parkway under section 204 of title 23) requiring the use of publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance, or land of an historic site of national, State, or local significance (as determined by the Federal, State, or local officials having jurisdiction over the park, area, refuge, or site) only if—

> (1) there is no prudent and feasible alternative to using that land; and

> (2) the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use.

49 U.S.C. § 303(c).

dismissal on the ground that the Coalition lacked standing because its claimed injuries were not caused by any final federal agency action.[5]

Section 10(a) provides: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA generally defines "agency" to mean "each authority of the Government of the United States, whether or not it is within or subject to review by another agency," *id.* § 701(b)(1), and limits review to "final agency action," *id.* § 704. To establish standing under section 10(a), "the person claiming a right to sue must identify some 'agency action' that affects him in the specified fashion; it is judicial review 'therof' to which he is entitled." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 882 (1990). Here, the Coalition "fail[ed] to identify any particular 'agency action' that was the source of [its] injuries." *Id.* at 899. In fact, it has identified no *federal* agency action at all.

The complaint alleges the Clayton–Shrewsbury Extension has been planned and will be constructed by two *local* governmental bodies, the East–West Gateway Coordinating Council, which is the designated St. Louis metropolitan planning organization, and the Bi–State Development Agency, which operates MetroLink. *See* Complaint ¶¶ 37, 38, 49, 51, 81. To date there has been *no* involvement with the Clayton–Shrewsbury Extension by any federal agency. Nonetheless, the Coalition argues that the FTA's past and current funding of other portions of the MetroLink system and its future funding of the Clayton–Shrewsbury Extension make the Clayton–Shrewsbury Extension a federal project.[6] We disagree.

---

[5] Because we affirm on lack of standing, we do not address the district court's alternative ground for dismissal.

[6] At oral argument, the Coalition asserted in addition that final agency action lay in the FTA's decision not to conduct an environ-

To support federal status, the Coalition relies on the allegations in the complaint that the MetroLink system cannot operate without federal funding, that the FTA is in fact financing construction of a separate MetroLink extension and that the FTA *will* provide funding to (1) maintain trains that will run on the Clayton–Shrewsbury Extension (2) help make up the transit system's annual operating budget deficit caused by the Extension, (3) construct facilities to repair and maintain trains that will run on the Extension, (4) purchase new trains for the Extension and (5) construct exit ramps for park-and-ride near stations that will serve the Extension. Appellant's Br. at 21–22; *see also* Complaint ¶¶ 45, 33–34, 46. The Complaint further alleges that the federal government is "providing federal subsidies for the rest of MetroLink" and that, when the Extension is "completed," the East–West Gateway Coordinating Council will have the "opportunity" to use the Extension to obtain matching federal grants to extend the transit system. Complaint ¶¶ 49, 48. All of this may be true but it does not make construction of the Clayton–Shrewsbury Extension at this time a federal project constituting federal agency action.

In *Macht v. Skinner*, 916 F.2d 13 (D.C. Cir. 1990),[7] this court held that a non-federally funded light rail transit line

_____

mental review but it is well established that the "refusal to prepare an [Environmental Impact Statement] is not itself a final agency action for purposes of APA review." *Public Citizen v. Office of U.S. Trade Reps.*, 970 F.2d 916, 918 (D.C. Cir. 1992) (citing *Found. on Econ. Trends v. Lyng*, 943 F.2d 79, 85 (D.C. Cir. 1991)).

[7] Although *Macht* addressed specifically what constitutes a "major federal action" under NEPA, its principles apply equally to defining federal action subject to review under the APA. In fact, this court has expressly concluded that the requisite final agency action under section 10(a) of the APA is the " 'major Federal action[ ] significantly affecting the quality of the human environment,' within the meaning of 42 U.S.C. § 4332(2)(C)." *Found. on Econ. Trends v. Lyng*, 943 F.2d 79, 85 (D.C. Cir. 1991). Similar federal involvement is required under section 4(f) of DOTA, which

under construction in Baltimore was not "federalized" simply because the federal government had financed studies of proposed extensions to the line or because the local transit authority hoped to obtain federal funding to construct the extensions down the line. The court reasoned that "[a]t th[at] point, the federal involvement [was] not the firm commitment that could transform the so far entirely state-funded Light Rail Project into major federal action affecting the environment within the meaning of NEPA." 916 F.2d at 17 (citing *Defenders of Wildlife v. Andrus,* 627 F.2d 1238, 1243 (D.C. Cir. 1980)). The same holds true here. The declaration submitted by the FTA Regional Director below avers that the FTA received no request or application to fund the Clayton–Shrewsbury Extension, Declaration of FTA Regional Director Mokhtee Ahmad in Support of the Federal Defendants' motion to Dismiss ¶ 5, and the Coalition does not dispute this statement. That the parties anticipate, even intend, future federal funding does not ensure it will come about. *See Macht v. Skinner*, 916 F.2d at 17 (" '[T]here is a wide gulf between what a state may want and what the federal government is willing to provide.' ") (quoting *Macht v. Skinner,* C.A. No. 89–1161, at 7–8 (D.D.C. Dec. 21, 1989)). To seek review under the APA the Coalition must allege the FTA is " 'irretrievably committed' " to providing funds for the Clayton–Shrewsbury Extension, *Macht*, 816 F.2d at 17 (quot-

---

"applies only to federally-funded transportation projects," *Macht*, 916 F.2d at 15 n.3 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 405 (1971)), and under the NHPA, which "imposes obligations only when a project is undertaken either by a federal agency or through the auspices of agency funding or approval," *Lee v. Thornburgh*, 877 F.2d 1053, 1056 (D.C. Cir. 1989). *Cf. Macht*, 916 F.2d at 15–16 n.3 ("Because the expenditure of federal funds for preliminary planning and environmental impact statements does not federalize the Light Rail Project under NEPA, it similarly does not federalize the Project under § 4(f).") (citing *Md. Conservation Council, Inc. v. Gilchrist*, 808 F.2d 1039, 1043 (4th Cir. 1986)).

ing *Macht v. Skinner*, No. 89–1161, at 7–8). This it cannot do.

The Coalition argues that the MetroLink "system" has become "irrevocably federalized" because of other funding it has received and continues to receive from the federal government. That other parts of the system are federally funded, however, does not make the discrete Clayton–Shrewsbury Extension federally funded. It is the Extension that the Coalition alleges will affect the environment so as to trigger the statutory environmental review requirement. *Cf. Macht*, 916 F.2d at 16–17 (federal funding of preliminary studies for proposed extensions does not federalize non-federally funded light rail system construction).[8]

Finally, the Coalition asserts the district court erred in considering matters outside the pleadings on a motion to dismiss, without affording the Coalition opportunity for discovery. Although "the District Court may in appropriate cases dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) on the complaint standing alone," "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing

---

[8] The Coalition also argues that the MetroLink system was intentionally "segmented" to avoid environmental review of the Clayton–Shrewsbury Extension. It is not impermissible, however, to structure construction and funding so as to avoid the burden of environmental review—this is precisely what the state of Maryland did in *Macht* when it decided to scale back its proposed line and withdraw its federal funding request for the express purpose of avoiding the delay environmental review might cause. *See* 916 F.2d at 15. Nor is there any indication here that the construction has been structured in a way that will "lead to evaluation of segments in isolation of one another, thereby creating a misleading picture of the impact of the project as a whole." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 299 (D.C. Cir. 1987).

*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987); *Wilderness Soc'y v. Griles*, 824 F.2d 4, 16–17 n.10 (D.C. Cir. 1987); 5A C. Wright & Miller, Federal Practice and Procedure § 1350, at 213 (1990)). Thus, to the extent the district court relied on the declaration of the FTA Regional Director, it did not err. As for the lack of discovery, the Coalition has made no allegation which, if substantiated, would establish standing to sue under the APA. Most importantly, it does not dispute that at present the federal government has made no commitment to finance the Clayton–Shrewsbury Extension. Without such a commitment, there is no final federal agency action to review and therefore no party with standing under section 10(a) of the APA.

For the foregoing reasons, the judgment of the district court is

*Affirmed.*