# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 6, 2018            July 17, 2018

No. 17-1002

BIG BEND CONSERVATION ALLIANCE,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

TRANS-PECOS PIPELINE, LLC,
INTERVENOR

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

*Jacob Brooks* argued the cause for petitioner. With him on the briefs was *David A. Bricklin*. *Carolyn Elefant* entered an appearance.

*Beth G. Pacella*, Deputy Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *James P. Danly*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Jeremy C. Marwell* argued the cause for intervenor. With him on the brief were *Michael B. Wigmore*, *James D. Seegers*, and *Conor P. McEvily*.

Before: TATEL, MILLETT, and KATSAS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: Big Bend Conservation Alliance petitions for review of two orders of the Federal Energy Regulatory Commission authorizing facilities to export natural gas from the United States to Mexico. Seeking an expanded environmental review, Big Bend argues that FERC, in addition to exercising jurisdiction over the export facilities at the border, also should have exercised jurisdiction over the intrastate pipeline delivering gas to the border. Alternatively, Big Bend contends that regardless of the scope of FERC's jurisdiction under the Natural Gas Act, an expanded review was required by the National Environmental Policy Act.

I

A

The Natural Gas Act regulates transporting and selling natural gas in "interstate commerce," as well as importing and exporting natural gas in "foreign commerce." 15 U.S.C. § 717(b). The Act does not regulate "any other transportation or sale of natural gas." *Id.*

Section 3 of the Act prohibits the "export" or "import" of natural gas, to or from a foreign country, without prior authorization by FERC. *See* 15 U.S.C. § 717b(a). (This grant of authority to the Federal Power Commission was transferred to the Secretary of Energy, 42 U.S.C. § 7151(b), then delegated in part to FERC, U.S. Dep't of Energy, Delegation Order No. 00-004.00A, § 1.21.A (May 16, 2006).) We have construed Section 3 also to require prior authorization to construct export

and import facilities. *See Distrigas Corp. v. Fed. Power Comm'n*, 495 F.2d 1057, 1064 (D.C. Cir. 1974).

Section 7 of the Natural Gas Act prohibits constructing or operating a facility to transport or sell natural gas in interstate commerce without a certificate of public convenience and necessity from FERC. 15 U.S.C. § 717f(c)(1)(A); *see* 42 U.S.C. § 7172(a)(1)(C)–(D). However, Section 311 of the Natural Gas Policy Act permits FERC to "authorize any intrastate pipeline to transport natural gas on behalf of … any interstate pipeline," at prices deemed by FERC to be fair and equitable. 15 U.S.C. § 3371(a)(2). Such authorized transportation is exempt from "the jurisdiction of the Commission" under the Natural Gas Act. *Id.* § 3431(a)(2)(A).

The National Environmental Policy Act (NEPA) requires federal agencies to prepare an environmental impact statement (EIS) for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Implementing regulations issued by the Council on Environmental Quality (CEQ) sometimes require agencies to prepare an environmental assessment—a document used to determine whether to prepare an EIS. 40 C.F.R. § 1508.9(a)(1). If the agency concludes that no EIS is required, it must issue a finding of no significant impact—a document explaining why the proposed action "will not have a significant effect on the human environment." *Id.* § 1508.13.

B

In the proceeding below, Trans-Pecos Pipeline, LLC, a Texas company, sought authorization under Section 3 to construct and operate an export facility consisting of a 1,093-foot pipeline running from a meter station in Presidio County, Texas, to the international border (the Export Facility). At the

same time, Trans-Pecos undertook to construct and operate, with regulatory approval from the Railroad Commission of Texas, a 148-mile intrastate pipeline (the Trans-Pecos Pipeline) that would transport natural gas produced in Texas to the Export Facility. At its upstream end, this pipeline would connect with other intrastate pipelines in West Texas, and might later connect with interstate pipelines. Big Bend intervened and argued that the Trans-Pecos Pipeline was an interstate pipeline covered by Section 7 and, alternatively, that this pipeline should be subject to NEPA review because FERC effectively controlled it.

FERC authorized the Export Facility under Section 3. *Trans-Pecos Pipeline, LLC*, 155 FERC ¶ 61140 (May 5, 2016) (*Authorizing Order*). It concluded that the Export Facility was subject to Section 3, but that the Trans-Pecos Pipeline was an intrastate pipeline not subject to Section 7. *Id.* at P 31. FERC stated that even if the pipeline were later authorized to transport interstate gas, its jurisdiction under the Natural Gas Policy Act would extend only to that service and would not trigger Section 7. *Id.* FERC further concluded that there was insufficient federal control over the pipeline to warrant NEPA review. *See id*. at PP 32–36. Big Bend sought rehearing, which FERC denied. *Trans-Pecos Pipeline, LLC*, 157 FERC ¶ 61081 (Nov. 1, 2016) (*Rehearing Order*).

FERC's jurisdictional determinations affected the scope of its environmental review. In particular, FERC issued an environmental assessment addressing impacts of the Export Facility and recommending a finding of no significant impact. Because FERC concluded that the Trans-Pecos Pipeline was intrastate and not under federal control, the assessment did not analyze its environmental impacts. FERC concluded that an EIS was not required because approval of the Export Facility "would not constitute a major federal action significantly

affecting the quality of the human environment." *Authorizing Order*, 155 FERC ¶ 61140, P 30.

Big Bend raises three lines of attack on these decisions. First, it contends that the Trans-Pecos Pipeline is itself an export facility subject to Section 3 of the Natural Gas Act. Second, it contends that the pipeline is an interstate pipeline subject to Section 7. Third, it contends that even if the pipeline were not subject to FERC's direct regulatory authority, it should nonetheless have been subject to NEPA review.

II

We begin with Big Bend's argument that the Trans-Pecos Pipeline is an export facility. Because Big Bend failed to present this argument to FERC on rehearing, we lack jurisdiction to consider it.

Section 19(a) of the Natural Gas Act bars judicial review of a FERC order "unless the person seeking review has first 'made application to the Commission for a rehearing thereon.'" *ASARCO, Inc. v. FERC*, 777 F.2d 764, 771 (D.C. Cir. 1985) (quoting 15 U.S.C. § 717r(a)). Moreover, Section 19(b) limits judicial review to arguments raised in the application for rehearing: "No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." 15 U.S.C. § 717r(b). As we explained in addressing parallel provisions under the Federal Power Act, "the party seeking judicial review must have raised in its rehearing request before the Commission each objection it puts before the reviewing court." *New England Power Generators Ass'n, Inc. v. FERC*, 879 F.3d 1192, 1198 (D.C. Cir. 2018).

Big Bend insists that it did raise its Section 3 argument on rehearing before FERC. It highlights two statements in its application for rehearing. First, in its argument summary, Big Bend asserted that "[t]he Commission erred in allowing the applicant's requested classification of the system, incorrectly isolating the project into a single jurisdictional border-crossing facility under [the] Natural Gas Act [of] 1938, Section 3, and a non-jurisdictional associated facility regulated as an intrastate pipeline." J.A. 492. Second, Big Bend argued that the entire project should be subject to NEPA review because "the 'jurisdictional' segment is entirely, wholly dependent on the upstream 'non-jurisdictional' segment." J.A. 506.

These statements were not made in support of any argument that the Trans-Pecos Pipeline was subject to Section 3. Rather, they were made in support of Big Bend's second and third arguments—that the pipeline was an interstate one subject to Section 7 and that FERC impermissibly declined to review a project over which it had control. Thus, in developing the argument that FERC misclassified the pipeline, Big Bend asserted that the Export Facility "in fact combines with the so-called 'non-jurisdictional' segment into an interstate system." J.A. 492; *see also*, *e.g.*, J.A. 495 ("The applicant's clear intent is to operate the system as an interstate pipeline."); J.A. 496 ("this is a post-facto attempt to bypass required Section 7 classification"). Likewise, in developing the argument that whole-project review was required because FERC had control over the pipeline, Big Bend asserted that FERC's "underlying error" was its failure to classify the pipeline "as [an] interstate facilit[y] subject to … Section 7." J.A. 504. Nowhere did Big Bend alternatively assert that FERC also erred in failing to classify the pipeline as an export facility subject to Section 3.

Because Big Bend did not raise its Section 3 argument on rehearing before FERC, we cannot consider it here.

## III

We review the remaining issues on the merits. The Administrative Procedure Act requires us to set aside FERC orders that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Any "finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive." 15 U.S.C. § 717r(b). FERC must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *New England Power Generators Ass'n, Inc. v. FERC*, 881 F.3d 202, 210 (D.C. Cir. 2018) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## A

Big Bend contends that the Trans-Pecos Pipeline is an interstate pipeline subject to Section 7. In determining that the pipeline is an intrastate one subject to the regulatory authority of the Railroad Commission of Texas, FERC found that the pipeline initially will transport only gas produced in Texas. *See Authorizing Order*, 155 FERC ¶ 61140, P 31. Moreover, it concluded that, if the Trans-Pecos Pipeline were later authorized to transport gas on behalf of an interstate pipeline, that would not trigger Section 7. *See id.* at P 31. Big Bend challenges both conclusions.

Big Bend first asserts that the Trans-Pecos Pipeline is interstate because it will immediately ship natural gas that crossed state lines. However, substantial evidence supports FERC's conclusion that the pipeline "initially will only transport natural gas produced in Texas and received from

other Texas intrastate pipelines or Texas processing plants." *Rehearing Order*, 157 FERC ¶ 61081, P 9. The pipeline is located entirely within Texas. *Id.* at P 2 n.7. It is directly connected with other intrastate pipelines, *id.* at P 9, but not with the Waha Hub—a nearby source of interstate gas, *id.* at P 2 n.7. Moreover, there is "abundant Texas-sourced natural gas to supply the Trans-Pecos Pipeline without relying on interstate volumes." *Id.* at P 11. Finally, Trans-Pecos specifically represented that the pipeline would, in fact, carry only gas produced in Texas. *Id.*

Next, Big Bend contends that the pipeline is interstate because Trans-Pecos anticipates using it to transport gas produced outside of Texas. Big Bend acknowledges that Section 311 of the Natural Gas Policy Act permits FERC to authorize an intrastate pipeline to transport gas on behalf of an interstate pipeline without triggering Section 7, but it argues that Section 311 does not apply to new pipelines. Otherwise, Big Bend asserts, pipeline operators could avoid Section 7 by building nominally intrastate pipelines that in reality will engage solely in Section 311 transportation.

Whatever the merits of such concerns about future developments, they are misplaced on this record. First, the orders under review do not prospectively authorize the Trans-Pecos Pipeline to transport natural gas under Section 311. They simply observe that *if* the pipeline someday provides qualifying service under Section 311, that service will not subject the pipeline to Section 7. *See Authorizing Order*, 155 FERC ¶ 61140, P 31; *Rehearing Order*, 157 FERC ¶ 61081, PP 10–11. This observation merely restates applicable law— the Natural Gas Policy Act provides that "the jurisdiction of the Commission" under the Natural Gas Act "shall not apply" to transportation authorized under Section 311. 15 U.S.C. § 3431(a)(2)(A)(ii). The statement is also consistent with

9

FERC precedent recognizing that new intrastate pipelines may provide Section 311 service after being placed into service. *See*, *e.g.*, *Roadrunner Gas Transmission, LLC*, 153 FERC ¶ 61041, P 5 (Oct. 15, 2015) ("new intrastate pipeline … initially … will provide only intrastate service," but "may later provide service under Section 311"); *NET Mex. Pipeline Partners, LLC*, 145 FERC ¶ 61112, 61598 (Nov. 8, 2013) (similar). In addition, neither the *Authorizing Order* nor the *Rehearing Order* commits the agency to any particular course of action should Trans-Pecos seek to provide Section 311 service in the future.

Second, this is not a case where the only realistic, or even primary, use of an intrastate pipeline is to provide Section 311 service. Rather, as noted above, FERC permissibly found both that there is enough Texas-sourced gas to support the pipeline and that it initially will carry only Texas-sourced gas. Although we can imagine a pipeline operator submitting an artificially narrow application in order to evade federal regulation, this is not such a case. Here, FERC found "no evidence" that building the Trans-Pecos Pipeline would frustrate the purposes of the Natural Gas Act or of the Natural Gas Policy Act, *see Rehearing Order*, 157 FERC ¶ 61081, P 11, and Big Bend does not point us to any evidence that it believes FERC overlooked. Moreover, the Commission has previously asserted Section 7 jurisdiction over ostensibly intrastate facilities that were constructed solely to provide Section 311 service. *See*, *e.g.*, *Egan Hub Partners, L.P.*, 73 FERC ¶ 61334, 61930 (Dec. 18, 1995). Indeed, in this very proceeding, FERC indicated that it might have taken that approach had it detected an effort to evade the Natural Gas Act. *See Rehearing Order*, 157 FERC ¶ 61081, P 11 & n.32. Finding none, the Commission reasonably concluded that it lacked jurisdiction over the pipeline.

In sum, substantial evidence supports FERC's finding that the Trans-Pecos Pipeline is a non-jurisdictional intrastate pipeline subject to regulation by the State of Texas. We affirm its refusal to exercise jurisdiction over the pipeline.

B

Big Bend finally contends that even if the Trans-Pecos Pipeline were not subject to FERC's direct regulatory authority, the agency nonetheless should have included it in its NEPA review. Big Bend asserts two alternative theories: the projects at issue were impermissibly segmented, and the pipeline should be "federalized" for NEPA purposes. FERC rejected both theories, *see Authorizing Order*, 155 FERC ¶ 61140, PP 32–36; *Rehearing Order*, 157 FERC ¶ 61081, PP 7–16, as do we.

1

CEQ regulations require federal agencies, in conducting NEPA reviews, to jointly consider "[c]onnected actions." 40 C.F.R. § 1508.25(a)(1). Actions are connected if they are "interdependent parts of a larger action and depend on the larger action for their justification." *Id.* § 1508.25(a)(1)(iii). "The point of the connected actions doctrine is to prevent the government from 'segmenting' its own 'federal actions into separate projects and thereby failing to address the true scope and impact of the activities that should be under consideration.'" *Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31, 49–50 (D.C. Cir. 2015) (brackets omitted) (quoting *Del. Riverkeeper Network v. FERC*, 753 F.3d 1304, 1313 (D.C. Cir. 2014)).

The connected-actions doctrine does not require the aggregation of federal and non-federal actions. In *Sierra Club*,

we held that the need for federal approvals to construct discrete segments of an oil pipeline did not subject the entire pipeline to NEPA review. *See* 803 F.3d at 49–50. Although the pipeline was "undoubtedly a single 'physically, functionally, and financially connected' project," the key point was that the bulk of it was not subject to federal jurisdiction. *See id.* at 50 (quoting *Del. Riverkeeper*, 753 F.3d at 1308). "The connected actions regulation," we explained, "does not dictate that NEPA review encompass private activity outside the scope of the sum of the geographically limited federal actions." *Id.* at 49.

This reasoning controls here. The Export Facility was subject to FERC's jurisdiction, but the Trans-Pecos Pipeline was not. Because no federal action was required to authorize the pipeline's construction, there were no connected *federal* actions, and so the connected-actions regulation does not apply.

Big Bend errs in its reliance on *Delaware Riverkeeper*, which held that FERC had arbitrarily divided a single natural-gas pipeline into four separate projects for purposes of its NEPA review. *See* 753 F.3d at 1314, 1318–19. In *Delaware Riverkeeper*, the entire interstate project was subject to FERC's Section 7 jurisdiction. *Id.* at 1307. Here, in contrast, the Trans-Pecos Pipeline is not subject to federal jurisdiction.

2

Big Bend alternatively contends that FERC's involvement in authorizing the Export Facility was enough to "federalize" the Trans-Pecos Pipeline. This Court has declined to adopt that theory on several occasions.

We first discussed the federalization theory in *Macht v. Skinner*, 916 F.2d 13 (D.C. Cir. 1990). That case involved a NEPA challenge to the construction of a railroad line that

required a federal wetlands permit. *Id.* at 17–18. The plaintiffs argued that the need for this permit "federalized" the project. We disagreed. Although we described the federalization theory as "sound," we declined to apply it because the Army Corps of Engineers had control over "only a negligible portion" of the project. *Id.* at 19–20 (quotation marks omitted).

Subsequent developments have called into question whatever support *Macht*'s dictum may have given to the federalization theory. As we explained in *Karst Environmental Education & Protection, Inc. v. EPA*, 475 F.3d 1291 (D.C. Cir. 2007), when *Macht* was decided, "we had not yet held … that NEPA claims must be brought pursuant to the APA." *Id.* at 1297. Once we did, it became clear that judicial review of NEPA claims must address actions by the *federal* government, because review under the APA requires "final agency action," 5 U.S.C. § 704, which means final action by an agency of "the Government of the United States," *id.* § 701(b)(1). *See Karst*, 475 F.3d at 1297–98; *see also Sierra Club*, 803 F.3d at 50–51 (federal regulatory control over segments of oil pipeline did not federalize entire pipeline project); *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 197–98 (D.C. Cir. 2003) (federal funding for portions of rail transit system and prospect of future federal funding did not federalize rail-line extension project). Thus, as we definitively held in *Karst*, "although the federalization theory may have had merit when we decided *Macht*, it lacks vitality today." 475 F.3d at 1297.

In light of *Karst*, we view Big Bend's remaining arguments about which federalization test should govern as largely beside the point. But, at the risk of gilding the lily, we note that they fail even on their own terms.

The Commission assessed its control over the Trans-Pecos Pipeline under the four-factor balancing test it had set out in

*Algonquin Gas Transmission Co.*, 59 FERC ¶ 61255, 61934–35 (June 2, 1992).  Big Bend does not challenge how FERC applied the factors, but whether those factors set forth the proper test.  Specifically, Big Bend contends that FERC should have asked whether the pipeline would have been constructed but for the agency's approval of the Export Facility.  In *National Committee for the New River, Inc. v. FERC*, 373 F.3d 1323 (D.C. Cir. 2004), which was decided before *Karst*, we rejected this but-for test as one that would improperly allow FERC "to extend its jurisdiction over non-jurisdictional activities simply on the basis that they were connected to a jurisdictional pipeline." *Id.* at 1334.  Big Bend further asserts that FERC had previously used a but-for test in 1987, but arbitrarily abandoned it here.  In fact, FERC abandoned that test in *Algonquin Gas*, *see* 59 FERC ¶ 61255, 61935, and has not used it since.  Big Bend's arguments thus depend on a version of a theory that both FERC and this Court had rejected, even before this Court rejected the theory itself.

\* \* \*

For these reasons, we deny the petition for review.

*So ordered.*