# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 3, 2017          Decided June 23, 2017

No. 16-1014

LOUISIANA PUBLIC SERVICE COMMISSION,
PETITIONER

V.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

ARKANSAS PUBLIC SERVICE COMMISSION AND ENTERGY
SERVICES, INC.,
INTERVENORS

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

*Michael R. Fontham* argued the cause for petitioner. With him on the briefs were *Paul L. Zimmering*, *Noel J. Darce*, and *Dana M. Shelton*.

*Carol J. Banta*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the briefs were *David L. Morenoff*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Mark Strain* argued the cause for intervenors. With him

on the briefs were *David C. Duggins*, *Marnie A. McCormick*, *Gregory W. Camet*, *P. Randolph Hightower*, *Glen L. Ortman*, and *Dennis Lane*. *Adrienne E. Clair* entered an appearance.

Before: GARLAND, *Chief Judge*, GRIFFITH, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: The Louisiana Public Service Commission (LPSC) asked the Federal Energy Regulatory Commission (FERC) to reform certain depreciation rates on the ground that those rates were unjust, unreasonable, unduly discriminatory, or preferential. FERC rejected the request, finding that LPSC failed to meet its burden of proof. LPSC now petitions for review. For the reasons stated below, we deny its petition.

I

Entergy Corporation is a public utility holding company that sells electricity, both at wholesale and retail, in Arkansas, Louisiana, Mississippi, and Texas. It does business through five operating companies named after their respective jurisdictions: Entergy Arkansas, Inc.; Entergy Louisiana, LLC; Entergy Mississippi, Inc.; Entergy Texas, Inc.; and Entergy New Orleans, Inc. For decades, these companies worked together as an integrated system, and transactions between them were governed by a System Agreement. As we have described it before, "[t]he System Agreement act[ed] as an interconnection and pooling agreement for the energy generated in the System and provide[d] for the joint planning, construction and operation of new generating capacity in the System." *La. Pub. Serv. Comm'n v. FERC*, 522 F.3d 378, 383 (D.C. Cir. 2008).

In 2000, a spike in natural-gas prices caused large production-cost disparities between the five operating companies. *Id.* at 385. For example, Entergy Louisiana, which was hit particularly hard by the natural-gas price hike, incurred production costs that were 12 percent above System average; Entergy Arkansas' production costs, conversely, were 17 percent below average. *Id.* To mitigate the unfairness of these production-cost disparities, which in turn affect the cost-of-service rate for the sale of wholesale power to other operating companies in the System, *id.* at 390, FERC fashioned the "bandwidth remedy," *La. Pub. Serv. Comm'n v. Entergy Servs.*, 111 FERC ¶ 61,311 (2005) (Opinion No. 480). That remedy provided for a maximum annual bandwidth of +/- 11 percent, thereby permitting at most a 22-percent spread between the companies' production costs. *Id.* at 62,371. If production-cost disparities exceeded the bandwidth in a given year, the companies were required to make payments to one another to bring costs within the permissible range. In choosing a +/- 11 percent bandwidth, FERC sought only to produce *rough* cost equalization among the companies in order to prevent undue discrimination; it did not intend to eliminate *all* cost disparities because doing so might disrupt the System's historical operation. *See La. Pub. Serv. Comm'n*, 522 F.3d at 393-94.

When Entergy implements the bandwidth remedy each year, its first step is to calculate each company's annual production costs. The System Agreement provides a formula for doing that. *See* J.A. 504-10. One input into that formula is depreciation -- that is, the cost of an asset (e.g., a power plant) distributed over its estimated useful life. *See Ala. Power Co. v. FERC*, 160 F.3d 7, 8 (D.C. Cir. 1998).

This case is about the depreciation rates used in the bandwidth formula. Because states have exclusive jurisdiction

over retail energy regulation, *see FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 766 (2016), state regulatory agencies may use their own methodologies for determining retail depreciation rates. An Arkansas agency using its preferred accounting practices might set a power plant's remaining useful life at 10 years, while a Louisiana agency using its own practices might set that plant's remaining useful life at 20 years. This divergence would, in turn, lead those agencies to calculate the costs of their plants differently. FERC, meanwhile, has established accounting practices of its own, which it uses to set wholesale depreciation rates. *See* Depreciation Accounting, 92 FERC ¶ 61,078, 2000 WL 33539341 (2000) (Order No. 618).

Which depreciation rates does the bandwidth formula incorporate? Under FERC's reading, the formula calls for the use of retail depreciation rates set by state regulators in Arkansas, Louisiana, Mississippi, and Texas. *See Entergy Servs., Inc.*, 137 FERC ¶ 61,029, 2011 WL 4703181, at *13 (2011) (Opinion No. 514). The Fifth Circuit has upheld FERC's reading as a reasonable interpretation of the System Agreement, *La. Pub. Serv. Comm'n v. FERC*, 761 F.3d 540, 555 (5th Cir. 2014), and that reading is unchallenged in this case.

LPSC is an independent regulatory agency tasked with ensuring the reasonableness of energy rates charged in Louisiana. *See* LA. CONST. art. IV, § 21. In 2010, LPSC filed a complaint with FERC under Federal Power Act § 206, contending that Entergy's use of state retail depreciation rates in the bandwidth formula -- even if permissible under the System Agreement's terms -- was "unjust, unreasonable, unduly discriminatory or preferential" and thereby harmed Louisiana customers, 16 U.S.C. § 824e(a). Accordingly, LPSC argued, FERC had a duty to reform those rates. *Id.* (requiring FERC to "determine the just and reasonable rate . . . to be thereafter

observed and in force, and [to] fix the same by order" if it finds an existing rate "unjust, unreasonable, unduly discriminatory or preferential").

FERC rejected LPSC's complaint and follow-on rehearing petition, finding that LPSC failed to carry its burden of showing that the retail depreciation rates were unjust, unreasonable, unduly discriminatory, or preferential. *See La. Pub. Serv. Comm'n v. Entergy Corp.*, 139 FERC ¶ 61,107, 61,767-68 (2012) (Opinion No. 519); *La. Pub. Serv. Comm'n v. Entergy Corp.*, 153 FERC ¶ 61,188, 2015 WL 7308093, at *13-14 (2015) (Opinion No. 519-A). FERC reiterated that conclusion in two other orders. *See Entergy Servs., Inc.*, 142 FERC ¶ 61,022, 61,122-23 (2013) (Opinion No. 523); *Entergy Servs., Inc.*, 153 FERC ¶ 61,184, 2015 WL 7308089, at *6-7 (2015) (Opinion No. 523-A). LPSC now petitions for review.[1]

II

We review FERC's orders under the arbitrary and capricious standard, "treating FERC's factual findings as conclusive if supported by substantial evidence in the record." *La. Pub. Serv. Comm'n*, 522 F.3d at 391. "FERC's remedial

---

[1] The System Agreement was terminated on August 31, 2016, pursuant to a settlement between the Entergy companies and three state energy regulators (including LPSC). *See Entergy Ark., Inc.*, 153 FERC ¶ 61,347 (2015). Thus, even if we were to remand the challenged orders, and even if FERC were then to find some aspect of the Agreement unlawful, it could not change its terms prospectively. FERC would, however, have discretion to issue refunds for payments made above the just-and-reasonable rate dating back to the filing of LPSC's § 206 complaint. *See* 16 U.S.C. § 824e(b).

choice is lawful if the agency has 'examine[d] the relevant data and articulate[d] a . . . rational connection between the facts found and the choice made.'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Because "we may not substitute our own judgment for that of the Commission," we do not ask whether FERC's "decision is the best one possible or even whether it is better than the alternatives." *Elec. Power Supply Ass'n*, 136 S. Ct. at 782.

LPSC attacks FERC's orders on three grounds. All three are unavailing.

1. LPSC contends, first, that FERC failed to confront evidence of undue discrimination under the bandwidth formula. *See* 16 U.S.C. § 824e(a) (requiring FERC to reform "unduly discriminatory" rates). Different states use different methods for setting depreciation rates, LPSC argues, which leads to inconsistent production-cost calculations. Moreover, it continues, incorporating state-determined depreciation rates allows states to manipulate their rates to attain more favorable outcomes under the bandwidth formula.

Although this argument may make sense in theory, FERC found that LPSC had failed to support it with sufficient real-world evidence. Indeed, LPSC relied chiefly on a single example: the fact that Louisiana based its depreciation rates on license lives that "exceed the [Nuclear Regulatory Commission (NRC)] license lives," while Arkansas based its depreciation rates on "license lives that are substantially less than the NRC license lives." *La. Pub. Serv. Comm'n v. Entergy Corp.*, 134 FERC ¶ 63,016, 66,269 (2011). Although this illustrated that the two states used different depreciation rates, FERC concluded it did not prove that depreciation-rate disparities between the states were so gross as to undermine the rough cost-equalization

principle underlying the bandwidth remedy. Nor did LPSC's example involve rate manipulation: FERC found that Arkansas' shorter license lives stemmed not from an attempt to exploit the formula for its own benefit, but rather from a diverse array of legitimate ratemaking considerations. *See* Opinion No. 519, 139 FERC at 61,766-67.

LPSC is thus wrong to say that FERC failed to confront its asserted evidence of undue discrimination. In fact, both the administrative law judge and the Commission considered and discussed LPSC's proffered evidence, but they simply found it insufficient to satisfy LPSC's burden. *See* 16 U.S.C. § 824e(b) ("[T]he burden of proof to show that any rate . . . is unjust, unreasonable, unduly discriminatory, or preferential shall be upon the . . . complainant."). At bottom, FERC concluded, LPSC never showed that depreciation-rate inconsistencies or state manipulations were subverting the bandwidth formula's purpose of roughly equalizing costs.[2] Nonetheless, the Commission left open the possibility that it would reform the rates if a party marshaled more evidence showing discriminatory results.[3] Under our deferential standard of review, FERC only

---

[2] *See* Opinion No. 519-A, 2015 WL 7308093, at *14 ("[T]he Louisiana Commission fails to provide evidence demonstrating that these alleged distortions create cost disparities that prevent rough production cost equalization.").

[3] *See* Opinion No. 519-A, 2015 WL 7308093, at *5 ("If it were shown that there are circumstances under which the methodology in the formula with respect to depreciation expense would not result in a just and reasonable allocation of production costs, the Commission would exercise its statutory authority to determine appropriate changes to the depreciation component to ensure just and reasonable rates."); *see also* Oral Arg. Recording at 26:08-27.

had to confront the evidence that LPSC presented and reasonably explain why it did not doom the use of retail rates. *See, e.g.*, *Wisc. Power & Light Co. v. FERC*, 363 F.3d 453, 461 (D.C. Cir. 2004). The Commission fulfilled those obligations.

2. LPSC also asserts that the Commission departed from its rules and precedent without explanation by refusing to require that FERC's own depreciation rates be used in the bandwidth formula. *See, e.g.*, *La. Pub. Serv. Comm'n v. FERC*, 184 F.3d 892, 897 (D.C. Cir. 1999) ("For the agency to reverse its position in the face of a precedent it has not persuasively distinguished is quintessentially arbitrary and capricious."). We disagree.

To be sure, the Commission requires utilities to use FERC's own depreciation methodologies for purposes of wholesale ratemaking. *See* Order No. 618, 2000 WL 33539341, at *4. But the bandwidth formula does not directly implicate FERC's wholesale ratemaking activities; it is simply a component of an agreement between Entergy companies, which FERC has jurisdiction to monitor because of its effect on wholesale prices. *See La. Pub. Serv. Comm'n*, 522 F.3d at 390-91.[4] As the Commission explained, given the bandwidth formula's unique context, FERC precedent did not require the use of FERC's own depreciation standards. *See, e.g.*, Opinion No. 519-A, 2015 WL 7308093, at *7 ("[T]he circumstances surrounding the bandwidth formula are quite different from a

---

[4] *See also* Opinion No. 519-A, 2015 WL 7308093, at *7 ("The purpose of the bandwidth formula is not to set a cost-of-service rate for the sale of wholesale power, but to provide a basis to compare each [company's] production costs . . . in order to allocate such costs to achieve a rough equalization.").

standard calculation of wholesale rates.").

3. Finally, LPSC maintains that FERC unlawfully subdelegated its exclusive jurisdiction over wholesale rates by allowing the use of state-determined retail depreciation rates in the bandwidth formula. Federal agencies may not subdelegate their "decision-making authority . . . to outside entities -- private or sovereign -- absent affirmative evidence of authority to do so." *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 566 (D.C. Cir. 2004).

As it conceded at oral argument, LPSC unsuccessfully advanced this same unlawful-subdelegation argument before the Fifth Circuit. *See* Oral Arg. Recording at 46:47; *id.* at 48:18-20. The Fifth Circuit found no unlawful subdelegation because FERC used its own judgment "when it initially reviewed and accepted the bandwidth formula incorporating the state agencies' depreciation rates," and then "clarified that it will continue to exercise oversight of the state [depreciation] rates in . . . Section 206 complaint proceeding[s]." *La. Pub. Serv. Comm'n*, 761 F.3d at 552. FERC continues to exercise that review authority, as evidenced by the proceedings in this case. And we take the Commission at its word that it would grant a § 206 complaint if the complainant presented sufficient evidence of unjust, unreasonable, unduly discriminatory, or preferential rates -- which LPSC failed to do here. *See* Opinion No. 519-A, 2015 WL 7308093, at *5; Oral Arg. Recording at 26:08-27. Like the Fifth Circuit, we therefore conclude that there has been no unlawful subdelegation because FERC has exercised, and intends to continue to exercise, its § 206 review authority. *Cf. U.S. Telecom Ass'n*, 359 F.3d at 567 (finding unlawful subdelegation where an agency allowed "states [to] make crucial decisions . . . with [agency] oversight neither timely nor assured").

10

III

For the foregoing reasons, we reject LPSC's challenges and deny its petition for review.[5]

*So ordered.*

---

[5] Because LPSC has not shown that it is entitled to *any* relief, we need not consider its specific request for *retroactive* relief dating back to before its 2010 complaint. *See La. Pub. Serv. Comm'n*, 761 F.3d at 556.