# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 27, 2017  Decided January 19, 2018

No. 16-1023

NEW ENGLAND POWER GENERATORS ASSOCIATION, INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

DYNEGY MARKETING AND TRADE, LLC, ET AL.,
INTERVENORS

---

Consolidated with 16-1024

---

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

---

*James E. Tysse* argued the cause for petitioner. On the briefs were *Suedeen G. Kelly*, *John M. White*, and *Bruce F. Anderson*.

*Carol J. Banta*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief was *Robert H. Solomon*, Solicitor.

*Jason R. Marshall* and *Phyllis G. Kimmel* were on the brief for intervenor New England States Committee on Electricity, Inc. in support of respondent.

Before: GRIFFITH, *Circuit Judge*, and SENTELLE and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: The New England Power Generators Association petitions for review of two sets of orders of the Federal Energy Regulatory Commission concerning a scarcity pricing mechanism in the New England power market. *ISO New Eng. Inc.*, 147 FERC ¶ 61,172 (2014) ("*Tariff Order*"), *reh'g denied*, 153 FERC ¶ 61,223 (2015) ("*Tariff Rehearing Order*"); *New Eng. Power Generators Ass'n v. ISO New Eng. Inc.*, 150 FERC ¶ 61,053 ("*Complaint Order*"), *reh'g denied*, 153 FERC ¶ 61,222 (2015) ("*Complaint Rehearing Order*"). The exhaustion requirements of the Federal Power Act ("FPA") deprive us of jurisdiction over the Association's petition to review the Tariff Order. Accordingly, we dismiss the petition in Case No. 16-1023 seeking review of the Tariff Order. We reach the merits in the Association's challenge to the Complaint Order and hold that the Commission was not arbitrary or capricious in denying the Association's complaint. We therefore deny the petition in Case No. 16-1024 seeking review of the Complaint Order.

**I.**

**A.**

ISO New England Inc. is a private, non-profit entity that administers wholesale electricity and capacity markets in New

England.  *See Blumenthal v. FERC*, 552 F.3d 875, 878 (D.C. Cir. 2009).  In this role, ISO New England must submit its tariff to the Commission for approval under FPA § 205, 16 U.S.C. § 824d.  *See Braintree Elec. Light Dep't v. FERC*, 550 F.3d 6, 9 (D.C. Cir. 2008).  The tariff establishes rates for the electricity and capacity markets, and FPA § 205 requires that these rates be "just and reasonable."  *See id.*

ISO New England operates two distinct markets for wholesale electricity under its tariff: a day-ahead market and a real-time market.  In the day-ahead market, participants offer to sell one-hour blocks of electricity to be delivered the next day. In the real-time market, electricity is offered in five-minute increments for immediate delivery, which corrects for imbalances between electricity scheduled in the day-ahead market and real-time demand.  Our opinion in *Black Oak Energy, LLC v. FERC*, 725 F.3d 230, 233 (D.C. Cir. 2013), discusses the history and purpose of these markets.

To ensure that generators produce enough energy in real time, ISO New England's tariff includes a special pricing mechanism triggered when energy in the real-time market is scarce. When insufficient energy is being produced or energy prices become excessive, the price in the real-time market is set based upon Reserve Constraint Penalty Factors. *See Complaint Order*, at P 6.  We will refer to these as "Scarcity Rates" to reflect their function.  The Scarcity Rates are a set of fixed values, preestablished in ISO New England's tariff, that correspond to different categories of energy generation.  The Scarcity Rates serve as inputs to ISO New England's pricing algorithm during scarcity conditions, as well as price caps representing maximum allowable prices in the real-time market. For our purposes, it is enough to say that higher Scarcity Rates produce higher real-time energy prices under stressed market conditions.

ISO New England also administers an auction market for capacity. Capacity is "a kind of options contract" to ensure availability of electricity in the future. *Advanced Energy Mgmt. All. v. FERC*, 860 F.3d 656, 659 (D.C. Cir. 2017) (per curiam). Under ISO New England's tariff, capacity is allocated in a forward capacity market in which capacity is bought and sold in annual blocks three years in advance. *See Complaint Order*, at P 2. For example, a capacity auction was held in February 2014 covering the capacity commitment year of June 1, 2017, through May 31, 2018. Payments for capacity purchased in these annual auctions are delivered to capacity suppliers monthly during the capacity commitment year. *See id.* In return, capacity suppliers must offer capacity in the day-ahead and real-time electricity markets over the course of that year. *See id.*

Like the Scarcity Rates in the real-time energy market, ISO New England uses special pricing mechanisms in the capacity market to correct perceived market failures. At issue here is the Peak Energy Rent Adjustment (the "Adjustment"), which attempts to claw back some revenues earned by capacity suppliers when prices in the real-time energy market are very high. The Adjustment has two intended purposes. *See Complaint Order*, at P 3 (citing *Devon Power LLC*, 115 FERC ¶ 61,340, at PP 24, 29 (2006)). First, it is intended to mitigate the costs of price spikes to electricity purchasers. Second, it is intended to reduce the incentive for electricity suppliers to generate price spikes intentionally by withholding electricity. To put it simply, the Adjustment removes a rolling average of "peak energy rents" from suppliers' monthly capacity payments and rebates this revenue back to load. *See Complaint Order*, at P 4. Each day, ISO New England calculates a "strike price," a price just above the marginal cost of running the most expensive power generator in New England. *See id.* It next calculates hourly peak energy rents—roughly the excess of the real-time electricity price over the strike price—for any hour in which the

real-time price exceeds this strike price, time periods we will refer to as "Adjustment Events." *See id.* ISO New England then derives a monthly value of peak energy rents, averages it over the past twelve months, and subtracts this quantity from suppliers' monthly capacity payments as the total Adjustment. *See id.*

Importantly, this value is deducted from every capacity supplier's monthly capacity payments, without regard to whether a particular supplier actually sold energy in the real-time market at the high price. *See id.* However, according to the Association, the vast majority of capacity suppliers clear their electricity offers in the day-ahead market. They therefore receive the day-ahead market price, rather than the real-time price on which the Adjustment is based. The Commission has acknowledged that this is a "potential inefficiency," *Tariff Rehearing Order*, at P 105, and, in light of other changes to New England power markets, has approved elimination of the Adjustment starting with the capacity commitment year beginning June 1, 2019, *ISO New Eng. Inc.*, 151 FERC ¶ 61,096, at P 1 (2015).

At issue here is the interaction between the Scarcity Rates and the Adjustment. Although the triggers for implementing Scarcity Rates and Adjustment Events are not identical, the magnitude of the Adjustment is based on the price of real-time energy, which in turn is based on the Scarcity Rates under certain market conditions. Thus, a change in the Scarcity Rates changes the Adjustment in theory, if not also in practice.

**B.**

In January 2014, ISO New England and the New England Power Pool ("NEPOOL") Participants Committee submitted proposals to revise ISO New England's tariff under FPA § 205,

16 U.S.C. § 824d. These proposals purported to improve generator performance and reliability in New England. In its May 2014 Tariff Order, the Commission rejected both proposals and instituted a proceeding under FPA § 206, 16 U.S.C. § 824e, to determine new rates. *Tariff Order*, at P 1.

Pursuant to FPA § 206, the Commission found the existing tariff to be unjust and unreasonable, found each of the two proposed revisions had not been shown to be just and reasonable, and adopted a combination of the ISO New England and NEPOOL proposals as just and reasonable. *Tariff Order*, at PP 23–25. The Commission ordered ISO New England to submit a compliance filing modifying its tariff accordingly. *Id.* at P 25. Relevant here, the Commission directed increases in the size of a subset of the Scarcity Rates to incentivize better performance, as originally proposed by NEPOOL. *Id.* at PP 107–09. In light of these increases, the Commission instructed ISO New England to discuss in its compliance filing what further changes to its tariff, if any, were necessary. *Id.* at P 110. Additionally, the Commission dismissed as "beyond the scope of this proceeding" GDF SUEZ Energy Marketing NA, Inc.'s ("GDF SUEZ") concern that increases to the Scarcity Rates would exacerbate inefficiencies associated with the Adjustment. *Id.* In its compliance filing, ISO New England ultimately agreed with this assessment, and it opted instead to initiate a separate stakeholder process to reconsider the Adjustment.

After the Commission issued the Tariff Order, several parties sought rehearing or requested clarification. Two of these filings matter in this case. First, the Association filed a Motion for Clarification, which addressed an unrelated issue, but it never requested rehearing. *See* Reply Br. of Pet'r 1; Oral Arg. at 7:21–7:57. Second, several parties ("Indicated Generators"), including members of the Association, requested rehearing.

This request urged that ISO New England's tariff exclude the increases to the Scarcity Rates or alter the Adjustment in light of the increased Scarcity Rates. JA 269–70. On November 19, 2015, the Commission denied rehearing. *Tariff Rehearing Order*, at P 105. The Commission again recognized the "potential inefficiency" with the Adjustment but stated that it "exists independent of the increase" to the Scarcity Rates and was therefore unnecessary to consider in the proceeding before it. *Id.* The Commission noted that it had approved revisions to the tariff that eliminated the Adjustment beginning June 1, 2019, and suggested that any changes prior to that date could be made through a separate stakeholder process. *Id.* at P 106. As a result, the increased Scarcity Rates went into effect on December 3, 2014. *See ISO New Eng. Inc.*, 149 FERC ¶ 61,009, at P 23 (2014).

That same day, the Association filed a complaint under FPA § 206 challenging the Adjustment in effect through May 31, 2018. The Association contended that the increased Scarcity Rates exacerbated the adverse impact of the Adjustment, that capacity suppliers could not adjust their prices to adapt because the relevant capacity auctions—which take place three years in advance—had already occurred, and that the Adjustment was therefore unjust and unreasonable. As evidence, the Association referred to an analysis by ISO New England, a simulated historical back-cast that calculated the size of the Adjustment as if the new Scarcity Rates had already been in effect. The Association later supplemented this with data from an Adjustment Event that occurred on December 4, 2014. On January 30, 2015, the Commission denied the complaint, finding the Association had not met its FPA § 206 burden to show that ISO New England's existing tariff—by that point, the revised tariff with the higher Scarcity Rates—was unjust and unreasonable. *Complaint Order*, at P 35. The Association

requested rehearing, which the Commission denied. *Complaint Rehearing Order*, at P 20. This petition for review followed.

## II.

### A.

As a threshold matter, we lack jurisdiction to consider the Association's challenge to the Tariff Order because the Association has not met the requirements of FPA § 313(a), 16 U.S.C. § 825l(a). This provision is a "mandatory petition-for-rehearing requirement." *Granholm ex rel. Mich. Dep't of Nat. Res. v. FERC*, 180 F.3d 278, 281 (D.C. Cir. 1999). We have no "discretion to ignore this 'express statutory limitation on the jurisdiction of the court.'" *DTE Energy Co. v. FERC*, 394 F.3d 954, 960 (D.C. Cir. 2005) (quoting *Cal. Dep't of Water Res. v. FERC*, 306 F.3d 1121, 1125 (D.C. Cir. 2002)). Although FPA § 313(a) was not briefed, "we have an independent obligation to assure ourselves of jurisdiction, even where the parties fail to challenge it." *Floyd v. District of Columbia*, 129 F.3d 152, 155 (D.C. Cir. 1997).

Section 313(a) states: "No proceeding to review any order of the Commission shall be brought by any entity unless *such entity* shall have made application to the Commission for a rehearing thereon." 16 U.S.C. § 825l(a) (emphasis added). While the Association filed a Motion for Clarification of the Tariff Order, it did not file an "application to the Commission for a rehearing thereon," so we cannot consider its petition to review that order.

Moreover, it is insufficient under § 313(a) that the Indicated Generators, which requested rehearing, may include members of the Association. Section 313(a) governs our ability to entertain a petition to review a Commission order "by any entity." We

lack jurisdiction to do so unless "*such entity*"—that is, the entity petitioning our court for review—requested rehearing.  There is no contention here that Indicated Generators and the Association are the same "entity," even if some members overlap.  Thus, the Association needed to seek rehearing.  It did not.  While we need not consider precisely why Congress created this unusually demanding exhaustion scheme, *cf. ASARCO, Inc. v. FERC*, 777 F.2d 764, 774 (D.C. Cir. 1985) (considering rationale behind materially equivalent rehearing requirement in the Natural Gas Act), our precedent is clear that § 313(a) deprives us of jurisdiction over the claims of a petitioner who failed to seek rehearing, even if some other party sought rehearing, *see, e.g.*, *DTE Energy*, 394 F.3d at 960–61.

**B.**

Even if the Association had submitted its Motion for Clarification as a request for rehearing, which it did not, we would still lack jurisdiction over the Tariff Order for another reason.  Section 313(b) of the FPA provides, "No objection to the order of the Commission shall be considered by the court unless *such objection* shall have been urged before the Commission *in the application for rehearing* unless there is reasonable ground for failure so to do."  16 U.S.C. § 825l(b) (emphases added).  Like § 313(a), this prerequisite for review is jurisdictional; we have no discretion to disregard it.  *See DTE Energy*, 394 F.3d at 961.  That is, under § 313(b), the party seeking judicial review must have raised in its rehearing request before the Commission each objection it puts before the reviewing court.  *See Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 876 F.2d 109, 112–13 (D.C. Cir. 1989); *see also Kelley ex rel. Mich. Dep't of Nat. Res. v. FERC*, 96 F.3d 1482, 1487–88 (D.C. Cir. 1996) (rejecting "implicit" arguments as insufficient).  Here, the Association's Motion for Clarification concerned an issue distinct from those now

advanced in its petition for judicial review. The Association thus failed to meet the requirement of § 313(b).

Nor can the contents of Indicated Generators' rehearing request save the Association. It is of no moment that Indicated Generators objected to the increased Scarcity Rates' effect on the Adjustment. Like § 313(a), § 313(b) contains an identity of entity exhaustion requirement. It is not enough that some party before the Commission raised the argument and that the Commission considered it; instead, the party petitioning for judicial review must itself have requested rehearing, and made the same objections it seeks to raise in court. *See Platte River*, 876 F.2d at 112–13. The text of § 313(b) "makes it plain that what is referred to is the same application for rehearing mentioned earlier in subsection (b), which in turn (by reason of the same use of the definite article) clearly refers to the same application for rehearing mentioned in subsection (a), to wit, the application of *the party who seeks judicial review*." *ASARCO*, 777 F.2d at 773 (discussing materially equivalent language in the Natural Gas Act).

The Association offers the excuses that it had a "reasonable ground for failure," 16 U.S.C. § 825l(b), to raise its objections in a rehearing petition, and that the Tariff and Complaint Orders are so "inextricably linked" that they must be considered together, Reply Br. of Pet'r 4. The "reasonable ground" exception "is reserved for an 'extraordinary situation,'" such as when a Commission practice is admitted or adjudged to be unlawful. *Save Our Sebasticook v. FERC*, 431 F.3d 379, 382 (D.C. Cir. 2005) (quoting *Wis. Power & Light Co. v. FERC*, 363 F.3d 453, 460 (D.C. Cir. 2004)). The Association's alleged "reasonable ground"—that it "reasonably believed" the Adjustment would be addressed in ISO New England's compliance filing, Reply Br. of Pet'r 2—is not comparable to the "reasonable grounds" we have previously accepted. In any

event, the Association's position is unconvincing in light of previous decisions in this proceeding: ISO New England stakeholders had already rejected GDF SUEZ's proposal to modify the Adjustment, *see* JA 154, and the Commission, in directing ISO New England's compliance filing, explicitly gave ISO New England the option not to further alter its tariff in response to the increased Scarcity Rates, *see Tariff Order*, at P 110. The Association was certainly on notice that the Adjustment might not be changed—Indicated Generators evidently saw the problem and petitioned for rehearing accordingly—so this by no means presents an extraordinary situation.

In addition, the two cases the Association cites for its "inextricable link" argument, Reply Br. of Pet'r 4, do not control on our facts. The cited language from *Cities of Batavia v. FERC*, 672 F.2d 64, 72 n.15 (D.C. Cir. 1982), is dicta from a footnote; the jurisdictional issue there was resolved on other grounds, *id.* at 72–73. *Kansas Cities v. FERC*, 723 F.2d 82 (D.C. Cir. 1983), found jurisdiction when a rehearing request timely challenged an order accepting a compliance filing but not an earlier order specifying the relevant legal rule to be used in the agency proceedings, *id.* at 85–86. In that case, it was unclear whether the petitioners were "aggrieved" by the earlier order, as is required for jurisdiction under FPA § 313. *See Kan. Cities*, 723 F.2d at 85–86 & n.3. Here, we need not consider when the Association became "aggrieved" because the Association never filed a rehearing request. Furthermore, unlike both *Cities of Batavia* and *Kansas Cities*, the jurisdictional problem in our case does not concern the fact that there were multiple Commission orders in the same ongoing proceeding. Distinct from the Tariff Orders, the Complaint Orders are from a wholly separate, Association-initiated proceeding, albeit concerning related content. Applying the exception to the Association's petition would render § 313(b)'s strict jurisdictional bar toothless for

Commission-initiated § 206 proceedings, as any complaint would be "inextricably linked" to the earlier agency proceedings.

**III.**

**A.**

Although we have no jurisdiction to consider the Association's objections to the Tariff Order, we have jurisdiction to consider its objections to the Complaint Order. The Association filed a timely request for rehearing raising the objections it now presses in its timely petition for judicial review. The Association has therefore satisfied FPA § 313's jurisdictional requirements. *See* 16 U.S.C. § 825l(a), (b); 18 C.F.R. §§ 385.713(b), 385.2007(a).

The FPA dictates the standard of judicial review. In a proceeding under FPA § 205, such as the initial proposed tariff revisions by ISO New England and NEPOOL, "[t]he utility bears 'the burden of proof to show that the increased rate . . . is just and reasonable . . . .'" *Advanced Energy Mgmt.*, 860 F.3d at 662 (quoting 16 U.S.C. § 824d(e)). In a proceeding under FPA § 206, such as the Association-initiated complaint proceeding, the challenging party, whether the Commission or a complainant, carries the burden of proving a rate is unjust and unreasonable. *See* 16 U.S.C. § 824e(b); *see also, e.g.*, *La. Pub. Serv. Comm'n v. FERC*, 860 F.3d 691, 695 (D.C. Cir. 2017). Once the Commission finds that a rate is unjust and unreasonable, the Commission bears the burden of determining a new just and reasonable rate. *See Advanced Energy Mgmt.*, 860 F.3d at 663 (citing 16 U.S.C. § 824e(a)). We review Commission determinations under the arbitrary and capricious standard. *See Blumenthal*, 552 F.3d at 881 (citing 5 U.S.C. § 706(2)(A)). Because we are dealing here with technical and

policy-based determinations, the Commission's judgment is entitled to judicial respect. *See S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41, 55 (D.C. Cir. 2014) (per curiam).

We conclude that the Complaint Orders were not arbitrary and capricious. The Association initiated its complaint pursuant to FPA § 206 and accordingly bore the burden of proof. The Commission confronted the Association's evidence and found it insufficient to demonstrate that rates were unjust and unreasonable. *Complaint Order*, at PP 35–41. The Commission, while carefully explaining why the Association had failed to deal adequately with the overall revenue context, left open the possibility that additional evidence could alter its judgment. *Id.* at P 40. The Commission gave three reasons for its judgment.

First, the Commission found that the Association's evidence, which consisted of data from the December 4, 2014, Adjustment Event and a counterfactual historical back-cast, neglected to consider the likely frequency and size of future Adjustment Events. *Complaint Order*, at PP 36, 40; *Complaint Rehearing Order*, at PP 23, 28. Without such context, especially in light of other changes to ISO New England's tariff, the Commission reasonably found that this evidence did not show the Adjustment was unjust and unreasonable. Contrary to the Association's claim before the court, the Commission did not require proof of "additional instances of actual harm," Br. for Pet'r 43, but rather found that the Association had failed to explain what its data meant for the total impact of the Adjustment.

Second, the Commission faulted the Association for not addressing potential increases to energy prices in the day-ahead market, which in aggregate might offset expected increases to the Adjustment. *Complaint Order*, at PP 38–39; *Complaint*

*Rehearing Order*, at P 29. The Commission noted that these rates adjust daily and might, on average, increase in anticipation of expected higher real-time market prices due to the increased Scarcity Rates. *Complaint Order*, at PP 38–39. The Association's shortcoming, in the Commission's view, was its failure to consider how other aspects of the energy market might respond to the new Scarcity Rates. As such, the Commission reasonably explained why it thought the Association had not demonstrated an aggregate change to supplier revenue that was unjust and unreasonable.

Third, the Commission determined that price floors effective in pre-Tariff Order capacity auctions might compensate for any additional losses from the potentially larger Adjustment. *Id.* at P 37. The Association takes issue with this because the price floors were already part of the just and reasonable rate on file, so, the Association contends, the price floors cannot offset a change to the Adjustment. Br. for Pet'r 37–42. This is not strictly correct, as "[t]he Supreme Court has repeatedly rejected the argument that there is only one just and reasonable rate possible . . .." *Blumenthal*, 552 F.3d at 883 (internal quotation marks omitted). To the extent the price floors generated rates high in the "zone of reasonableness," *cf. Maine v. FERC*, 854 F.3d 9, 22–24 (D.C. Cir. 2017) (clarifying role of "zone of reasonableness" in FPA § 206 proceedings), they might prevent increases to the Scarcity Rates from making the Adjustment unjust and unreasonable. Regardless, in denying rehearing, the Commission did not rely on its price-floor determination, except insofar as it argued that settled expectations do not preclude rate changes. *Complaint Rehearing Order*, at P 30 & n.46.

Because the Commission fulfilled its obligation to "examine the relevant data and articulate a satisfactory explanation for its action," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*

*Co.*, 463 U.S. 29, 43 (1983), we find the Complaint Orders were not arbitrary or capricious.

**B.**

We decline to disturb this result—as the Association urges us to do—in response to the outcome of the Association's second complaint proceeding challenging the Adjustment under FPA § 206, initiated in September 2016. *See New Eng. Power Generators Ass'n v. ISO New Eng., Inc.*, 158 FERC ¶ 61,034, at P 13 (2017). In that proceeding, the Association provided twenty months of additional evidence in arguing that the Adjustment had become unjust and unreasonable because of the increased Scarcity Rates. *See id.* at PP 13–23 (summarizing the complaint). The Commission agreed. *Id.* at P 48.[1] This additional evidence cured the Commission's concern that the limited evidence initially relied upon might not reflect overall market conditions under the revised tariff. *Id.* at PP 49–51.

So long as any change is reasonably explained, it is not arbitrary and capricious for an agency to change its mind in light of experience, or in the face of new or additional evidence, or further analysis or other factors indicating that the agency's earlier decision should be altered or abandoned. *Cf. FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514–16 (2009). The Supreme Court has itself overruled many of its decisions over the years in light of such considerations. *See* Congressional Research Service, *The Constitution of the United States of America: Analysis and Interpretation*, S. Doc. No. 112-9, at

---

[1] As of this opinion, an uncontested settlement is pending before the Commission. We note that any settlement would not fully moot this case because the second complaint proceeding has a refund effective date of September 30, 2016, *see New Eng. Power Generators Ass'n*, 158 FERC ¶ 61,034, at P 1, whereas the complaint in this case requested a refund effective date of December 3, 2014, *see* JA 378.

2623–35 (2017). As a corollary, a change in an agency's course in reaction to new information does not indicate that its initial course was necessarily arbitrary and capricious when charted. On the facts before us, the Commission's reconsideration when presented with more data does not change our view of the propriety of the Complaint Orders.

## IV.

The Association also raises procedural objections to the Commission's orders, arguing that the Commission unlawfully allocated burdens of proof and imposed illegal evidentiary rules. As a preliminary matter, the Association, in its rehearing request, did not raise the argument that the Commission improperly shifted the burden of proving that the Adjustment was unjust and unreasonable.[2] This objection is therefore barred under FPA § 313(b) for reasons already discussed. The Association's objections are in any event not well-taken. The Commission complied with the burdens of proof of the FPA. And the Association's evidentiary challenges amount to little more than complaints about the Commission's weighing of evidence, which we have already concluded the Commission carried out in a satisfactory manner in accordance with the burdens of proof.

## V.

For the reasons stated above, the petition for review of the Tariff Order, Case No. 16-1023, is dismissed for lack of

---

[2]The Association did raise an argument about who bears the burden of proving a new rate is just and reasonable once an existing rate is found to be unjust and unreasonable under FPA § 206. However, this is distinct from the argument now raised before this court.

jurisdiction and the petition for review of the Complaint Order, Case No. 16-1024, is denied on the merits.

*So ordered.*