# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 20-1330**

**September Term, 2021**

FILED ON: JANUARY 25, 2022

NGL SUPPLY WHOLESALE, LLC,
                PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION AND UNITED STATES OF AMERICA,
                RESPONDENTS

PHILLIPS 66 COMPANY AND PHILLIPS 66 PIPELINE LLC,
                INTERVENORS

On Petition for Review of an Order
of the Federal Energy Regulatory Commission

Before: SRINIVASAN, *Chief Judge*, ROGERS, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

## J U D G M E N T

This petition for review was considered on the record from the Federal Energy Regulatory Commission and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the petition for review be **DENIED**.

Operated by Phillips 66 Pipeline LLC (Phillips Pipeline), the 688-mile Blue Line carries propane between northern Texas and western Illinois. The northern half of the Blue Line is bidirectional, flowing west-to-east in the winter months and east-to-west in the summer. Its shippers include two propane suppliers: Phillips 66 Company (Phillips 66) and NGL Supply Wholesale, LLC. Phillips 66 is an affiliate of Phillips Pipeline.

Under the Interstate Commerce Act (ICA), 49 U.S.C. app. § 1 *et seq.* (1988), the Federal Energy Regulatory Commission (Commission) regulates the interstate transportation of propane by pipeline. In 2019, NGL filed a complaint with the Commission, alleging that Phillips Pipeline has unreasonably denied NGL access to the Blue Line and has instead favored Phillips Pipeline's

affiliate, Phillips 66.

NGL's complaint made three arguments relevant here. First, it contended that Phillips Pipeline has illegally declined to offer common-carrier service over a small segment of Phillips 66-owned pipes and metering facilities that connect the Blue Line to a privately owned terminal in Conway, Kansas. Second, NGL maintained that Phillips Pipeline's prorationing policy—used to allocate limited pipeline capacity among shippers in high-demand periods—is unjust, unreasonable, and unduly discriminatory. Third, NGL argued that a propane-exchange agreement into which it had entered with Phillips 66 effectively enabled Phillips 66 to set the terms and conditions of transportation service on the Blue Line in violation of the ICA.

The Commission rejected those arguments. *See NGL Supply Wholesale, LLC v. Phillips 66 Pipeline LLC*, 172 FERC ¶ 61,016 (2020) (Order), J.A. 1–13. First, the Commission determined that it lacked jurisdiction over Phillips 66's proprietary interconnection at Conway, reasoning that the location of the Conway interconnection site comes before the commencement of propane transportation activities over which the Commission had jurisdiction. Second, the Commission found that Phillips Pipeline's prorationing policy was permissible. And third, the Commission concluded that the NGL-Phillips 66 exchange agreement was a non-jurisdictional commodity agreement rather than a jurisdictional transportation agreement.

NGL filed a timely petition for review of the Commission's order, which we review under the arbitrary-and-capricious standard. *United Airlines, Inc. v. FERC*, 827 F.3d 122, 127 (D.C. Cir. 2016). Applying that standard, we conclude that none of NGL's arguments warrants relief.

*First*, NGL contends that the Commission ignored its arguments as to why Phillips 66's proprietary interconnection at Conway was subject to the Commission's jurisdiction. Specifically, NGL faults the Commission for failing to discuss its prior decision in *Lakehead Pipe Line Co.*, 71 FERC ¶ 61,338 (1995), which held that certain tank facilities located in the middle of a pipeline were subject to the Commission's jurisdiction because they were "necessary" and "integral" to the pipeline's overall transmission function. But the Commission adequately accounted for *Lakehead* by drawing upon a more recent Commission decision that was itself expressly based on *Lakehead*. In *TE Products Pipeline Co.*, 131 FERC ¶ 61,277, at ¶ 12 (2010) (*TEPPCO*), the Commission "appl[ied] . . . *Lakehead*" and determined that terminal facilities that were "not on [the pipeline's] mainline system and consist[ed] of smaller pipes, metering facilities, and storage tanks" were non-jurisdictional because they were "not integral or necessary to the [pipeline's] transportation function." The Commission relied on *TEPPCO* in the order under review, concluding that the Phillips 66 proprietary interconnection at Conway—"a few feet of pipeline and some metering facilities" through which Phillips 66 tenders propane to the Blue Line—was located before jurisdictional transportation commenced. Order ¶¶ 13, 15 (citing *TEPPCO* ¶ 12), J.A. 4–5.

In addition, the Commission noted that shippers retain "other options" besides the interconnection by which "to originate propane on the Blue Line at Conway." *Id.* ¶ 16 n.18, J.A. 5; *see also id.* ¶ 14, J.A. 5 (reciting some). That observation further rebutted NGL's contention that the interconnection was a necessary or integral component of interstate propane transportation.

2

It also demonstrates why NGL's "concerns" that the Commission's order enables FERC-regulated pipelines to evade the ICA's nondiscrimination mandate by providing affiliates control over pipeline origin points are "misplaced on this record." *Big Bend Conservation All. v. FERC*, 896 F.3d 418, 422 (D.C. Cir. 2018).

NGL relatedly insists that the Commission wrongly conflated *TEPPCO*, which addressed non-jurisdictional storage terminals, with the non-storage pipeline facilities at issue here. Just as in *TEPPCO*, however, Phillips 66's proprietary interconnection at Conway was "not on [the] mainline system" and "consist[ed] of smaller pipes" and "metering facilities" operated by a "non-jurisdictional entit[y]." *TEPPCO* ¶ 12. And while *TEPPCO* involved "storage tanks," the Commission there also determined that the array of "smaller pipes" and "metering facilities" connecting the mainline to the terminal were non-jurisdictional—even though product necessarily moved through (and was not stored in) those pipes and meters. *Id.* ¶¶ 7, 12. The same is true for the facilities the Commission deemed non-jurisdictional here. And while NGL briefly makes some additional arguments about the Conway site, none demonstrates any deficiency in the Commission's order.

*Second*, NGL challenges the Commission's decision to sustain Phillips Pipeline's prorationing policy. Set out in the pipeline's tariff, that policy allocates the vast majority of the Blue Line's limited capacity to "regular shippers" with a record of shipments on the pipeline over a continuous twelve-month period. The policy allocates the remainder to less consistent, "new shippers." In sustaining the policy, the Commission observed that prorationing policies based on historical shipments are "commonplace" and have been "repeatedly approved." Order ¶ 19, J.A. 7.

NGL begins by asserting that the Commission failed to account for the implications of its prior decision in *Colonial Pipeline Co.*, 156 FERC ¶ 61,001 (2016). There, the Commission rejected a proposed prorationing policy that allocated capacity via a lottery system under which new shippers faced "nearly impossible odds of . . . obtaining sufficient capacity allocations" to become regular shippers. Order ¶ 21 (quoting *Colonial* ¶¶ 18–19), J.A. 9. In *Colonial*, new shippers then were largely precluded from becoming regular shippers regardless of the volumes they were prepared to nominate for shipment.

Here, by contrast, the Commission explained that "nothing" in Phillips Pipeline's prorationing policy "prevent[s] NGL from becoming a regular shipper if it nominates volumes in 12 consecutive months." *Id.* The Commission's inquiry into the prorationing policy's "practical effect" on shippers' ability to achieve regular-shipper status (should they nominate the requisite volumes) thus was consistent with *Colonial*. *Id.* (quoting *Colonial* ¶ 19); *see Mo. Pub. Serv. Comm'n v. FERC*, 783 F.3d 310, 316 (D.C. Cir. 2015) (explaining that "deference is due to the Commission's interpretation of its own precedent"). As the policy at issue here in no way prevented NGL from nominating the requisite volumes, the Commission permissibly determined that the concerns underlying its order in *Colonial* were inapplicable in this case. Order ¶ 21, J.A. 9.

NGL further resists the Commission's refusal to require that the Blue Line be prorationed by season (winter and summer), rather than by year. As the Commission explained, however, "there is no single method of allocating capacity in times of excess demand," and pipelines retain "considerable latitude" in crafting allocation policies designed to "meet circumstances specific to their operations" and to "reward shipper loyalty." *Id.* ¶¶ 19, 22 n.36 (citation omitted), J.A. 7, 10. The Commission reasonably rejected NGL's analogy to *Suncor Energy Marketing Inc.*, 132 FERC ¶ 61,242, at ¶ 140 (2010), which approved a prorationing policy that allocated capacity separately on "two physical segments of a pipeline system . . . with different capacities." Order ¶ 22, J.A. 9. The Blue Line, by contrast, consists of only a single pipeline segment and "changes in seasonal flow direction." *Id.*, J.A. 9–10. The Commission permissibly determined that *Suncor* involved unique circumstances and "does not stand for the proposition that a pipeline's decision not to prorate based on segments"—or seasons—"would in all instances be unjust, unreasonable and unduly discriminatory." *Id.*, J.A. 10.

*Third*, NGL faults the Commission's treatment of the NGL-Phillips 66 propane exchange agreement, over which the Commission determined it lacked jurisdiction. Although the Commission's treatment of this issue is relatively terse and might have profited from further elaboration, the order passes muster under our deferential standard of review. The Commission explained that its jurisdiction "encompasses oil pipeline transportation, and does not extend to the sales of petroleum products." *Id.* ¶ 12 (citation omitted), J.A. 3–4. Under the exchange agreement, NGL tendered propane to Phillips 66 at Conway in exchange for propane at NGL's terminals elsewhere on the Blue Line. The agreement thus plainly was an "exchange of product" that "does not constitute transportation service" under the ICA. *Id.*, J.A. 3. In accordance with that conclusion, the Commission incorporated by reference a section of the Phillips companies' joint answer explaining that the exchange agreement was a supply arrangement for which there was "no need to involve the pipeline at all," as there was "nothing for the pipeline to do to make an exchange happen." J.A. 253 (quoting *W. Refining Pipeline Co.*, 122 FERC ¶ 61,210, at ¶ 16 (2008)); *see* Order ¶ 11 & n.7, J.A. 3. And the Commission referenced precedent determining that analogous exchange agreements were non-jurisdictional, including one decision reasoning that, when "two shippers merely trade crude oil in one location on a pipeline system for barrels of oil located elsewhere on the pipeline and then individually arrange for transportation with the pipeline for the traded volumes . . . the trade . . . occurs separately from the pipeline's jurisdictional transportation services." Order ¶ 12 n.8 (quoting *Bridger Pipeline LLC*, 126 FERC ¶ 61,182, at ¶ 16 (2009)), J.A. 4.

NGL contends that the Commission failed to respond meaningfully both to its efforts to distinguish the cases upon which the order relied and NGL's arguments as to why the exchange agreement facilitated the shipment of propane along the Blue Line. But the Commission's discussion necessarily rejected certain of NGL's contentions, and the remainder do not provide a sufficient basis for rejecting the Commission's rationale. *See Pub. Serv. Elec. & Gas Co. v. FERC*, 989 F.3d 10, 20 (D.C. Cir. 2021). Because the Commission determined that it lacked jurisdiction over the exchange agreement, moreover, it properly declined to opine on NGL's claims based on that agreement.

4

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(b).

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk